**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 13-cv-02429-CMA

BRENDA ROBBINS,

    Plaintiff,

v.

CAROLYN W.COLVIN, Acting Commissioner of Social Security,

    Defendant.

---

**ORDER AFFIRMING ALJ'S DECISION DENYING SOCIAL SECURITY BENEFITS**

---

This matter is before the Court on review of the Commissioner's decision to deny Plaintiff Brenda Robbins ("Plaintiff") application for social security disability benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33. Jurisdiction is proper under 42 U.S.C. § 405(g).

## I. BACKGROUND

Plaintiff filed an application for disability benefits, alleging a disability onset date of March 19, 2009. Plaintiff was born on May 4, 1973, and was 35 years old on the date of her alleged disability onset. (AR at 8, 34.)[1] After her initial application was denied, Plaintiff requested a hearing, which was held on March 28, 2012, before an Administrative Law Judge ("ALJ"). (AR at 8.)

---

[1] Citations to the Social Security Administrative Record, which is found at Doc. # 9, will be to "AR" followed by the relevant page number.

Plaintiff testified that she has some college education and an accounting certification, which she obtained in 2010 after attending courses for six months, twice per week, for two hours a day. (AR at 35-36.) Previously, she delivered newspapers off and on for several years. (AR at 36-37.) For about a year and a half, she worked at a juvenile facility, where she supervised juveniles at night. She testified that she was injured on the job twice, but did not receive worker's compensation because her injuries were considered preexisting. (AR at 37-38.) She did, however, collect unemployment benefits, which required that she certify that she was ready, willing, and able to work and look for employment. (AR at 50-51.)

Following that position, from May to October 2011, she delivered mail on a rural route two days per week. She said that she stopped delivering mail because the job was too physically demanding and that, although the route should have taken her six hours to complete, it often took her ten hours. She left that position to work twice per week, eight hours per day, at an insurance agency, a position she continued to hold at the time of the hearing. (AR at 38-40.) She testified that, when the agency is busy, she may work an additional day, but that she would not work full time because it would be more than she could handle. (AR at 47-48.)

Plaintiff testified that when she is not working, she spends her time resting and doing household chores, such as loading the dishwasher, washing laundry, going grocery shopping, and cooking. She often gets help from her teenage daughters. She stated that she has difficulty lifting items, but can lift a gallon of milk. (AR at 45.) She bathes herself, but has a seat in the shower. (AR at 46.) She reported spending time

with friends and her mother.  (AR at 45.)  She drives and can do so for up to a half an hour.  (AR at 53.)

In 1989, Plaintiff was in a motor vehicle accident and had ankle and femur fixations that required multiple surgeries.  In 2008, she had additional surgeries on her ankles, following which, she has had to wear a brace on her right leg for most of the day.  (AR at 42-44.)  Plaintiff stated that she has difficulty walking, particularly on uneven terrain, and can walk approximately two to three blocks at a time.  (AR at 44, 46.)  Previously, she used a cane and a walker.  (AR at 44.)  She stated that she can stand for ten to fifteen minutes, but has to alternate her legs due to back and hip pain.  (AR at 46-47.)  Plaintiff testified that she has had right hip arthritis since 2002.  She can sit for approximately half an hour to an hour, and she has been so limited since 2009.  (AR at 52-53.)  She has suffered from headaches since her accident in 1989 and was diagnosed with occipital neuralgia, which is treated with Topamax.  (AR at 52.)  Plaintiff stated that due to her chronic pain, she has to take a one-hour nap each day.  (AR at 47.)

Plaintiff testified that since 2000, she has suffered from wrist pain due to carpal tunnel syndrome, but that doctors told her that she would not benefit from surgery.  (AR at 43.)  At times, she has had difficulty grasping small objects, such as buttons or zippers, because her hands swell.  (AR at 48.)  She reported having difficulty reaching overhead due to numbness and weakness.  (AR at 49.)  She testified that she can use a computer for short periods of time, but has difficulty after about fifteen minutes and must alternate typing with filing papers and doing stretching exercises.  (AR at 49, 51.)

Plaintiff testified that she takes Celexa, Percocet, Flexeril, Albuterol, and Flonase.  At the time of the hearing, she had been taking Ultram, Flonase, and Topamax for five or six years and Albuterol for approximately twelve years.  She testified that her medications make her sleepy.  (AR at 40-42.)  She has had pain injections in her shoulder, lower back, foot, and ankle.  (AR at 48-49.)  She stated that on a scale of one to ten, she would rate her pain at a four or five on a good day, when she's taking her medications.  (AR at 50.)

A vocational expert ("VE") testified at the hearing.  The ALJ posed a hypothetical question to the VE that assumed an individual with the same age, education, and work experience as Plaintiff and the residual functional capacity ("RFC") ultimately assessed by the ALJ.   The VE testified that such a person could perform work as an address clerk and micro film preparer.  (AR at 56-58.)

On April 9, 2012, the ALJ issued an unfavorable decision, denying benefits.  (AR at 8-23.)  The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2014.  In applying the five-step sequential evaluation process outlined in 20 C.F.R. §§ 404.1520 and 416.920 to determine whether Plaintiff was disabled, the ALJ determined that:

1. Plaintiff had not engaged in substantial gainful activity since her alleged onset date of March 19, 2009 [Step 1];

2. Plaintiff had the following severe impairments: "headaches, fibromyalgia, low back pain, osteoarthritis, carpal tunnel syndrome, asthma, neuropathy, foot pain, anxiety disorder, and major depressive disorder" [Step 2];

3. Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 [Step 3];

4. Plaintiff had the RFC "to perform work activities with the following limitations: the claimant must avoid exposure to unprotected heights, open machinery, and concentrated fumes, odors, and dust.  The claimant must not climb ladders or scaffolds.  The claimant is able to lift and carry 10 pounds frequently and 20 pounds occasionally.  She is able to sit at least one hour at a time and up to six hours in an eight-hour workday.  The claimant is able to stand and/or walk at least 15 minutes at one time and for a total of two hours in an eight-hour workday.  The claimant is able to occasionally stoop, kneel, crouch, and operate left leg controls.  The claimant is able to at least frequently reach, handle, and finder.  The claimant should avoid public interaction.  She is able to maintain the concentration, persistence, or pace necessary to carry out, understand, and remember simple and routine, but not complex instructions."  [Step 4]; and

5. Plaintiff was not able to perform her past relevant work, but "jobs exist in significant numbers in the national economy, that the claimant can perform." [Step 5].

Plaintiff requested that the Appeals Council review this portion of the ALJ's decision, which it declined to do.  (AR at 1-3.)  On September 6, 2013, Plaintiff filed her appeal to this Court of the Commissioner's final decision.  (Doc. # 1.)  Plaintiff filed her opening brief on May 19, 2014, and the Commissioner responded on June 12, 2014.  (Doc. ## 12, 13.)

## II. STANDARD OF REVIEW

The Court reviews the ALJ's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied.  See *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance.  *Id.* (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)).  Evidence is not substantial if it is overwhelmed by other evidence in the record.  *Grogan*

*v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In so reviewing, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency. *Salazar v. Barnhart,* 468 F.3d 615, 621 (10th Cir. 2006).

### III.  ANALYSIS

Plaintiff asserts that the ALJ's decision should be reversed because the ALJ's (1) summary of the evidence was inaccurate and not supported by substantial evidence, (2) credibility determination was based on the wrong legal standard, and (3) determination that Plaintiff could perform her past relevant work was not supported by substantial evidence. The Court will address each contention in turn.

**A.  WHETHER THE ALJ SUMMARY OF THE EVIDENCE WAS INACCURATE AND NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**

Although couched as an argument that the ALJ's decision was not supported by substantial evidence, Plaintiff's first argument essentially contests the weight assigned to two consultant examiners, Dr. Carson and Dr. Mitchell. Specifically, Plaintiff argues that the ALJ erred in giving Dr. Mitchell's opinion less weight than Dr. Carson's opinion.

The ALJ is required to weigh every relevant medical opinion he receives using the factors in 20 C.F.R. § 404.1527(c). Those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001); 20 C.F.R. § 404.1527(c). After considering these factors, the ALJ must "give good reasons in [the] notice of determination or decision" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2). "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." *Watkins v. Barnhart,* 350 F.3d 1297, 1301 (10th Cir. 2003) (quotation marks omitted).

In the instant case, the ALJ properly considered whether Dr. Mitchell's opinion was consistent with and supported by the record as a whole, the medical evidence, or her own examination findings.  *See* 20 C.F.R. §§ 404.1527(c)(3) (supportability); 404.1527(c)(4) (consistency); 404.1527(c)(6) (other factors).  Plaintiff points out, and the Commissioner concedes that the ALJ mistakenly stated that Dr. Mitchell examined Plaintiff one month after Dr. Carson, when, in fact, Dr. Mitchell examined Plaintiff six months before Dr. Carson's examination.  However, this mistake of fact does not require reversal.  First, the ALJ properly observed that Dr. Mitchell assigned severe functional limitations despite her examination findings, which showed full strength in Plaintiff's upper and lower extremities; some decreased range of motion in her cervical and dorsolumbar spine, but normal range of motion in her remaining joints; and negative straight leg raise, carpal tunnel compression, and Tinel's tests.  (AR at 19.) Second, the ALJ properly noted inconsistencies in Plaintiff's self-reported symptoms. (AR at 18.)  Third, the fact that Plaintiff later reported dramatically increased activities of daily living suggests that her functioning may have improved during the relevant time period. *See Wall*, 561 F.3d at 1069 (a court should not reverse for error that, "based on

a reading of the ALJ's decision as a whole, would lead to unwarranted remands needlessly prolonging administrative proceedings"). Accordingly, the Court determines that this factual error does not require reversal. *See Bernal v. Bowen*, 851 F.2d 297, 302-03 (10th Cir. 1988) (mere fact of error does not warrant remand if the ALJ's determination is otherwise supported by substantial evidence).[2]

Plaintiff also contends that the ALJ erred when he assigned less weight to Dr. Mitchell's opinion than to Dr. Carson's opinion, because both doctors performed thorough evaluations and reviewed some, but not all, of Plaintiff's medical records. In essence, Plaintiff asks this Court to reweigh the evidence, which it cannot do. *See Salazar,* 468 F.3d at 621. Plaintiff's contentions are not persuasive and the Court determines that the ALJ's decision is supported by substantial evidence.

**B. WHETHER THE THE ALJ'S CREDIBILITY DETERMINATION WAS BASED ON THE WRONG LEGAL STANDARD**

Next, Plaintiff contends that the ALJ erred when he found Plaintiff's complaints of pain not credible. "[C]redibility determinations 'are peculiarly the province of the finder of fact,' and should not be upset if supported by substantial evidence." *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2011) (quoting *Kepler v. Chater*, 68 F.3d 387, 390-91 (10th Cir. 1995)). Provided the ALJ links his credibility assessment to specific evidence in the record, his determination is entitled to substantial deference. *Id*. at 910; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996) (ALJ's decision "must contain specific reasons for the finding on credibility, supported by evidence in the case record").

---

[2] Similarly, the Court rejects Plaintiff's argument that the ALJ was required to explain why Plaintiff was sent to a second consultative examiner.

Because the determination of credibility is left to the ALJ as the finder of fact, that determination is generally binding on a reviewing court.

SSR 96-7p provides a non-exhaustive list of factors that an ALJ considers, in addition to the objective medical evidence, when determining whether she finds Plaintiff's complaints of disabling pain credible. Those factors include: (1) Plaintiff's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) medications and any side effects; (5) treatment, other than medication, that the individual has received; (6) measures other than treatment that Plaintiff uses to relive pain; and (7) any other relevant factors. SSR 96-7P, 1996 WL 374186, *3. The ALJ is not required to set forth a formalistic factor-by-factor recitation of the evidence, but must set forth only the specific evidence she relied upon in evaluating Plaintiff's testimony. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Plaintiff contends that the ALJ improperly found her complaints of pain not credible because of a lack of objective evidence. Therefore, Plaintiff argues, the ALJ applied an incorrect legal standard. While it is true that credibility determinations do not turn solely on whether objective evidence demonstrates that a claimant experiences pain, it is also true that "[a] claimant's subjective allegation of pain is not sufficient in itself to establish disability." *Thompson v. Sullivan,* 987 F.2d 1482, 1488 (10th Cir. 1993). Instead, "[b]efore the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-

producing impairment that could reasonably be expected to produce the alleged disabling pain." *Id.* (citations omitted).  As the Tenth Circuit has explained:

> [The court] must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

*Id.* (citing *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987)).

In the instant case, the ALJ properly analyzed the record as a whole and determined that Plaintiff's complaints of pain and the severity of her impairments were not credible.  In so doing, the ALJ discussed Plaintiff's activities of daily living, which included spending time with her mother and friends, limited household chores, driving, and working part time at an insurance agency. (AR at 14).  The ALJ also considered that many of Plaintiff's ailments were long standing and did not previously prevent her from working.  The ALJ also explicitly discussed inconsistencies in Plaintiff's statements regarding her pain.  For instance, the ALJ noted that Plaintiff told a treatment provider that she had not experienced back or ankle pain prior to a slip and fall in February 2008.  However, her medical records show that she had a long history of back pain that was a result of the 1989 motor vehicle accident and had undergone several surgeries on her ankle and foot because of a fracture and arthritis.  *See* 20 C.F.R. § 404.1529(c)(4); SSR 96-7P, 1996 WL 374186, at *5 (one strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record).  As a result, the ALJ observed that Plaintiff was not a "consistent historian regarding her symptoms and limitations." (AR at 16.)

10

Plaintiff argues that the ALJ improperly considered evidence that pre-dated Plaintiff's alleged disability onset date. However, that evidence was relevant to whether Plaintiff's impairments caused the limitations she claimed, particularly considering that she had long suffered many of her ailments, but continued to work. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("even if a doctor's medical observations regarding a claimant's allegations of disability date from earlier, previously adjudicated periods, the doctor's observations are nevertheless relevant to the claimant's medical history and should be considered by the ALJ"). The ALJ "clearly and affirmatively linked his adverse determination of [Plaintiff's] credibility to substantial record evidence . . . and [this Court's] limited scope of review precludes [it] from reweighing the evidence or substituting [its] judgment for that of the agency." *Wall*, 561 F.3d at 1070.

**C.   WHETHER THE ALJ'S DETERMINATION THAT PLAINTIFF COULD PERFORM HER PAST RELEVANT WORK WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**

Last, Plaintiff contends that the ALJ erred in finding that Plaintiff was capable of returning to her past relevant work. This argument is without merit. First, the ALJ specifically concluded that the "claimant cannot perform past relevant work." (AR at 21.) However, the ALJ did find that Plaintiff could perform representative occupations, such as address clerk and micro film preparer. (AR at 21-22.)

Second, Plaintiff argues that the ALJ improperly relied on testimony from the VE that was elicited in response to a hypothetical question that did not contain all of Plaintiff's limitations. However, Plaintiff does not state which limitations were excluded. Rather, this argument appears to rehash previous arguments, already rejected by this

Court, that the ALJ should have included additional limitations based on Dr. Mitchell's opinion. Accordingly, this argument is similarly without merit.

## IV. **CONCLUSION**

Accordingly, it is ORDERED that the ALJ's denial of social security disability benefits is AFFIRMED. Each party shall bear its own costs and attorney fees.

DATED: February __12__, 2015

BY THE COURT:

*[signature: Christine M Arguello]*

_____
CHRISTINE M. ARGUELLO
United States District Judge